IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

          v.                                16-CR-20-A

DONTE LEE,

              Defendant.
_____

## GOVERNMENT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, through its attorney, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Michael J. Adler, Assistant United States Attorney, of counsel, hereby files its Sentencing Memorandum.   For reasons which follow, the government respectfully requests that the Court impose a sentence of 97 months.   In order to impose this sentence, the government requests that the Court consider the factors listed under 18 U.S.C. § 3553(a).

## I.       SENTENCING PROCEDURE

### A.    Sentencing Under the Federal Sentencing Guidelines

The Supreme Court in United States v. Booker, 543 U.S. 220 (2005), excised Section 3553(b)(1) from the Sentencing Reform Act, which had strictly limited sentencing judges' discretion to the mandatory regime of the Sentencing Guidelines and Guidelines departures. Booker, 543 U.S. at 234, 236.   Today, after considering the Guidelines and all the applicable purposes of sentencing in Section 3553(a) of Title 18, a sentencing judge is required to decide

whether to impose a Guidelines or non-Guidelines sentence.   United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).

A Guidelines sentence is not what would have been imposed under the pre-Booker mandatory sentencing regime as within the strict Guidelines ranges of months of imprisonment or what would have been consistent with the limited departure authority to sentence above or below those strict ranges.   A non-Guidelines sentence deviates from the now-advisory Guidelines ranges of imprisonment for reasons, or to degrees, not necessarily justifiable as a Sentencing Guideline departure.   Crosby, 397 F.3d at 113.   So long as the sentence complies with the purposes of sentencing articulated in Section 3553(a) of Title 18, it may be imposed.

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]."   In determining the sentence, this Court must consider the following:

1.   the nature and circumstances of the offense and the history and characteristics of the defendant;

2.   the need for the sentence imposed –

   a.   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b.   to afford adequate deterrence to criminal conduct;

   c.   to protect the public from further crimes of the defendant; and

d.    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.    the kinds of sentences available;

4.    the kinds of sentence and the sentencing range established for –

a.    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

i.    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

ii.   that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

b.    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5.    any pertinent policy statement –

a.    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

b.    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6.    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.      the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range.   Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). This range is "the starting point and the initial benchmark."   Id.   As the Second Circuit held, "[t]he Guidelines range . . . represents the Sentencing Commission's considered opinion about what the sentence should be in an 'ordinary' case, and therefore serves as the district court's 'starting point' in selecting a sentence.   The § 3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" United States v. Dorvee, 616 F.3d 174, 182 (2d Cir. 2010).   Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guideline range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review.   United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005); United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (a district court commits procedural error where it fails to calculate the Guidelines range, makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body

of casual advice.'"   <u>Cavera</u>, 550 F.3d at 189, <u>quoting</u> <u>United States v. Crosby</u>, 397 F.3d 103, 113 (2d Cir. 2005); <u>see also</u> <u>United States v. Jones</u>, 531 F.3d 163, 174 (2d Cir. 2008) ("respectful consideration of the Guidelines . . . necessarily channels district court sentencing discretion").   Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances."   <u>United States v. Fernandez</u>, 443 F.3d 19, 27 (2d Cir. 2006).   <u>See also</u> <u>United States v. Eberhard</u>, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party."   <u>Gall</u>, 128 S. Ct. at 596.   In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented."   <u>Id.</u>, at 597.   In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence."   18 U.S.C. § 3661.   <u>See</u> <u>Cavera</u>, 550 F.3d at 190-91.   If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."   <u>Gall</u>, 128 S. Ct. at 597.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."   Id., citing Rita, 127 S. Ct. at 2456.   Although this Court need not engage in "robotic incantations" with respect to its consideration of the § 3553(a) factors, Fernandez, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."   Rita, 127 S. Ct. at 2468.   Further, "a district court imposing a non-Guidelines sentence . . . should say why she is doing so, bearing in mind . . . that 'a major departure [from the Guidelines] should be supported by a more significant justification than a minor one.'"   Cavera, 550 F.3d at 193 (quoting Gall, 128 S. Ct. at 197 (ellipses added, brackets in original)).

**B.   Evidence to be Considered at Sentencing**

Lengthy sentencing hearings should seldom be necessary.   U.S. Sentencing Guidelines Manual § 6A1.3(a) cmt. (2013).   Disputes over factual information can be resolved in a number of different ways.   "It might consist of opposing affidavits, letters or other writings, argument and comment directed to the court, cross-examination of witnesses, or a full-blown evidentiary hearing."   United States v. Prescott, 920 F.2d 139, 143 (2d Cir. 1990).   Whether through the submission of briefs or the presentation of evidence at an evidentiary hearing, the types of evidence that may be received are far broader than what would otherwise be admissible at a trial.   Indeed, as the Second Circuit held in United States v. Reese, "a sentencing court is free to consider hearsay evidence, evidence of uncharged

crimes, dropped counts of an indictment and criminal activity resulting in acquittal."   United States v. Reese, 33 F.3d 166, 174 (2d Cir. 1994).

The Sentencing Guidelines also state that "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."   U.S. Sentencing Guidelines Manual § 6A1.3(a) (2013); see also Fed. R. Evid. 1101(d)(3) (Rules of Evidence inapplicable at sentencing); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").   As then Circuit Judge Sotomayor wrote in United States v. Martinez, 413 F.3d 239 (2d Cir. 2005), even the Confrontation Clause does not apply at sentencing: "Both the Supreme Court and this Court . . . have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings." Martinez, 413 F.3d at 242.

Hearsay evidence is a particularly significant example of evidence that is admissible at sentencing.   See, e.g., United States v. Berroa-Nunez, 216 F. App'x 131, 133 (2d Cir. 2007) ("The district court was allowed to consider hearsay evidence in determining the drug quantity for which Berroa–Nunez was liable."); United States v. Prescott, 920 F.2d 139, 145 (2d Cir. 1990) (holding the government properly established the defendant distributed over 150 kilograms of cocaine where it relied on grand jury transcripts of cooperating witnesses).

Such evidence, or testimony, must still adhere to the due process requirement of having "some minimal indicia of reliability."   United States v. Martinez, 413 F.3d 239, 244 (2d Cir. 2005); United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007) ("[f]actual matters considered as a basis for sentence must have some minimal indicium of reliability beyond mere allegation."); U.S. Sentencing Guidelines Manual § 6A1.3(a) (2013) ("sufficient indicia of reliability.").

Whether or not hearsay evidence bears the minimal indicia of reliability necessary for its consideration is a very fact specific inquiry.   The crux of this inquiry seems to rest on the level of corroboration available for the statements.   For example, in Prescott, the Second Circuit found that grand jury transcripts of cooperators were sufficiently reliable where they were numerous and independent.   Prescott, 920 F.2d at 145; see United States v. Carmona, 873 F.2d 569, 575 (2d Cir. 1989) (finding that all "independent accounts meshed and plainly gave [the district court] an ample basis for ruling that the hearsay testimony was reliable"). In United States v. Robinson, 482 F.3d 244, 246-47 (3d Cir. 2007), the Third Circuit found a law enforcement officer's testimony, including hearsay of co-conspirators, sufficiently reliable where they were corroborated by audio recordings of the defendant discussing such matters. Likewise, the Sixth Circuit found the admission of unsworn statements of various co-defendants made pursuant to plea negotiations had sufficient indicia of reliability where the statements were corroborated by other evidence.   United States v. Labib, 38 F. App'x 257, 259-60 (6th Cir. 2002).   Cf. United States v. Moloney, 945 F. Supp. 46, 49 (W.D.N.Y. 1996), aff'd sub nom. United States v. Millar, 108 F.3d 1370 (2d Cir. 1997) ("The suggestion that Millar's attorney should be allowed to testify and repeat what Millar allegedly told him is totally unacceptable.   Such evidence is obviously hearsay which, of course does not

automatically bar its receipt at a sentencing hearing but I find that, in the circumstances of this case, such a rendition by defense counsel would be totally untrustworthy.").

## II.    ARGUMENT

According to the Presentence Investigation Report (PSR), the recommended guidelines sentence is 78 to 97 months.    A sentence at the high end of the guidelines would be sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)(2).

## A.    Nature and Circumstances of the Offense

The defendant was found guilty by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).   Normally, the guidelines account for the nature and circumstances of the offense in calculating an offense level.   In the instant case, for the crime of possessing a firearm as a prohibited person, the defendant faces a recommended guidelines range of 78 to 97 months.   This is reached by calculating the defendant's total offense level as a 26, which includes an enhancement for possessing the firearm in conjunction with another felony offense under § 2K2.1(b)(6)(B).   The government agrees with the application of this enhancement, and submits that it serves as a factor weighing towards a higher sentence for the defendant.

As was established at trial, the defendant was first observed by law enforcement running from the street, through an abandoned lot, towards a tree line.   The picture that was painted by both Detectives Cooley and Gambino during their trial testimony was of the defendant attempting to fire a gun at another person.   Detective Cooley testified that he saw

the defendant running.   See Testimony of Detective William Cooley, July 17, 2017 (hereinafter "Tr. 1") at p. 6, l. 18.   At first, Detective Cooley thought that the defendant was being chased.   Tr. 1 at p. 6, ll. 22-23.   He then changed his mind when he saw the defendant's arm become perpendicular to his torso and the defendant continued to run with his arm extended.   Tr. 1 at p. 7, ll. 1-3.   He testified that he "formed an opinion that we likely interrupted an attempted shooting."   Tr. 1 at p. 51, ll. 16-17.   See also Tr. 1 at p. 89, ll. 14-16 ("my contention was that we interrupted a shooting or a potential shooting.").

Detective Gambino likewise testified that he anticipated hearing gunfire.   He stated, "I thought we were going to be in the middle of a shooting."   See Testimony of Detective William Gambino, July 18, 2017 (hereinafter "Tr. 2") at p. 6, ll.12-13.   He thought they were in a shooting because "people were running from a position, looking back toward where they were running from.   People were running across the street.   A guy was diving off the porch . . . ."   Tr. 2 at p. 6, ll. 16-17.   "When I looked at everything going on, it looked like there was a shooting that was about to happen or just happened and we just missed it."   Tr. 2 at p. 9, ll.9-11.   See also Tr. 2 at p. 21 ll. 15-16 ("looked to me like there was going to be a shooting going on.").

After the defendant was apprehended, Detective Cooley said on the radio "I think we may have interrupted uh, interrupted a potential shooting here."   In addition, Buffalo Police Officer Dave Daniels went back to 525 Sherman, the location where the defendant had first been observed.   Officer Daniels stated over the radio that "according to some residents up here on Sherman Street, there were two individuals shooting at each other on Sherman Street

in the field."   He went on to say that "the incident just happened right now.   I guess uh Billy uh and them rode up on them . . ."

It is significant that the evidence also establishes that the defendant was not able to fire his weapon.   Testimony at trial from Jennifer Coombs the government's expert firearms analyst, was that she couldn't even see that something was wrong with the firearm when she dry fired it.   Ms. Coombs testified that she could hear the firing pin being released and thought there was no issue with it.   See Transcript of Jury Trial Proceedings, July 18, 2017 (hereinafter "Tr. 3") at p. 296, ll. 16-19.   Indeed, she test fired the gun five times.   Tr. 3 at p. 296, ll. 22-24.   These facts further support the proof that the defendant intended to fire his weapon on March 12, 2013 and that he wouldn't have known the firearm was not operable. The defendant's actions from that day, and the actions of those around him, establish this is the only logical conclusion as to what was happening when Detectives Cooley and Gambino arrived on the scene.

The facts establish by a preponderance of the evidence that the defendant was attempting to fire his weapon at another person.   Although a four level enhancement in the guidelines takes this into account, the conduct was nonetheless egregious enough to warrant a sentence at the high end of the guidelines.   Moreover, the existence of the enhancement supports the argument that more egregious conduct surrounding the possession of a firearm is reasonable in considering a higher sentence.

**B.**     <u>**History and Characteristics of the Defendant**</u>

The guidelines also generally account for the history and characteristics of the defendant in determining the defendant's criminal history category.   In some circumstances, the guidelines also account for history and characteristics in the defendant's base offense level. For example, in § 2K2.1, there are enhancements to a defendant's base offense level where he has either one or two prior felony crime of violence convictions.   The government agrees with the PSR's calculation that the defendant is a criminal history category III.   However, the government submits that this criminal history category does not fully capture the defendant's history and characteristics under § 3553(a)(1), particularly because the guidelines do not fully capture the nature of his prior convictions.

As is recounted in the PSR, the defendant has a lengthy history.   Much of that history relates to controlled substance convictions.   However, the defendant also has a history of gun possession as well.   Of note, in 1995, the defendant pled guilty to criminal possession of a controlled substance in the 5th degree and attempted criminal possession of a weapon in the 3rd degree.   The defendant had in his possession a loaded .38 caliber Diamond Black Colt revolver at the time of his arrest.   In 1998, the defendant was found guilty of the misdemeanor resisting arrest, but once again had charges that stemmed from possession of a loaded pistol.   The defendant's history is an important consideration for several of the factors listed under § 3553(a)(2), and further weighs in favor of a sentence towards the high end of the guidelines.

**C.**     <u>**The Need to Reflect the Seriousness of the Offense, to Promote Respect for the**</u>
<u>**Law, and to Provide Just Punishment for the Offense**</u>

Under 18 U.S.C. § 3553(a)(2)(A), the Court should consider how the sentence fashioned reflects the seriousness of the offense.   In order to achieve this retributive end, the Court should consider both the objective harm of the offense and the subjective culpability of the offender himself.   In the instant case, the defendant's conduct was serious.   As addressed in Section A, <u>supra</u>, the defendant did not merely possess a firearm when committing the instant offense.   His conduct also involved an attempted assault on another individual.   The legislature deemed a reasonable sentence for possession of a firearm by a prohibited person to be 10 years or less.   The nature of the defendant's possession (an attempt to discharge) is undoubtedly one of the more serious manners of possession one could imagine.   The imposition of a penalty must capture this egregiousness.   In order to justly punish the crime, a sentence at the high end of the guidelines is therefore reasonable.

The need for a sentence towards the maximum of the statute is further realized when one considers the need to promote respect for the law.   The defendant's history of convictions, including his prior firearms conviction, demonstrate the need under 3553(a)(2)(A) for a sentence promoting respect for the law.

**D.**     <u>**The Need to Afford Adequate Deterrence**</u>

Under 18 U.S.C. § 3553(a)(2)(B), the Court should consider whether a sentence affords adequate deterrence.   Unlike other sentencing considerations, the goal of deterrence is not to punish for the crime at hand, but to achieve a practical end for the future—namely the prevention of crime.   Deterrence can be both specific to the defendant or general to the

public.   As one court explained: "[s]pecific deterrence is meant to disincline individual offenders from repeating the same or other criminal acts. . . [while] [g]eneral deterrence attempts to discourage the public at large from engaging in similar conduct."   United States v. Blarek, 7 F. Supp. 2d 192, 210 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (internal citations omitted).

There is no question that there is a need for general deterrence with the instant case. The particular nature of the defendant's possession requires a public reminder that such actions will not be tolerated in the city of Buffalo, or elsewhere.   But it is specific deterrence where it becomes clear that a sentence at the high end of the guidelines is necessary.   The defendant may point to the age of his prior convictions.   But this does not weigh in his favor on the question of deterrence.   All this shows is that his lengthy prior history did not deter him from additional criminal conduct.   A punishment at the high end of the guidelines provides the necessary deterrent to ensure the defendant will not commit such an offense again.

**E.** **To Protect The Public From Further Crimes of the Defendant**

Finally, under 18 U.S.C. 3553(a)(2)(C) the court should consider the need to incapacitate the defendant in order to keep the public safe from further crimes.   The goal of incapacitation is to render an offender physically incapable of committing crime.

The defendant's lengthy track record of criminal activity weighs this factor towards a higher sentence.   In 1999 the defendant pled guilty to Assault in the 2nd Degree for assaulting

another inmate.   After he was released from custody, New York State Parole reflected that his adjustment to parole was poor.   But once again, the defendant's underlying conduct in the instant charge is what brings rise to the most serious concerns.   The defendant's willingness to attempt to discharge his firearm in broad daylight on a city street speaks to the need for incapacitation.

### III.   <u>CONCLUSION</u>

For the above reasons, the government respectfully requests that the Court impose a sentence of 97 months after consideration of the factors listed under 18 U.S.C. § 3553(a).


DATED:   Buffalo, New York, October 5, 2017.


JAMES P. KENNEDY, JR.
Acting United States Attorney


BY:   s/MICHAEL J. ADLER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York   14202
716/843-5857
Michael.Adler@usdoj.gov