UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

                Case # 16-CR-20-FPG
                  # 19-CV-489-FPG

v.

                DECISION AND ORDER

DONTE LEE,

       Defendant.
_____

    The defendant/petitioner, Donte Lee ("Petitioner"), has filed a *pro se* petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence of imprisonment for felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and possession of marijuana in violation of 21 U.S.C. § 844(a). ECF No. 114.[1] Petitioner contends that his conviction was improper on the grounds that trial counsel violated his Sixth Amendment right to counsel by providing him with ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

    For the reasons set forth below, the motion is DENIED.

## BACKGROUND

    On December 7, 2015, a criminal complaint was signed charging Petitioner with a violation of 18 U.S.C. § 922(g)(1) for unlawful possession of a firearm. ECF No. 1. On January 13, 2016, Petitioner's counsel filed a motion to stay the execution of a search warrant seeking a buccal swab of Petitioner on the basis that multiple buccal swabs had been obtained by the government and it was unclear to Petitioner and his counsel how the government was going to use the additional swabs. *See* ECF No. 8. Specifically, counsel was advised that after Petitioner's initial appearance

---

[1] All citations to CM/ECF refer to docket items in case number 16-cr-20.

in court he provided two separate buccal swabs from two kits. *Id*. at ¶ 4. Soon thereafter the government sought another DNA sample. *Id.* at ¶ 5. In seeking the additional sample, the government advised that a weapon submitted in relation to Petitioner's charges revealed a mixture of DNA from three unknown individuals. *Id.* at ¶ 6. There were no matching profiles in the CODIS DNA data bank and the DNA profile did not qualify for submission in the state and national data banks. *Id.*

Petitioner's counsel was further made aware that on December 22, 2015, when Petitioner was arrested, a federal buccal swab kit was used to collect Petitioner's DNA. *Id*. at ¶ 8. Later, the government was informed that the DNA samples obtained using the Federal kit could not be extracted using the equipment available to the CPS lab, and a new buccal swab, using the New York State swab kit would be necessary for testing. *Id.* at ¶ 9. The government then sought a search warrant for the DNA. *Id.* at ¶ 14. However, Petitioner's counsel was never provided with an affidavit in support of the application and therefore was unaware whether the government had probable cause for the swab or whether the government specified in seeking the warrant that there were two separate kits already utilized for DNA collection. *See id.* at ¶¶ 15-18. Nevertheless, the Court denied the motion to stay execution of the warrant. *See* ECF No. 9.

On February 16, 2016, an Indictment against Petitioner was filed alleging a violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), felon in possession of a firearm and ammunition, and 21 U.S.C. § 844(a), possession of marijuana. ECF No. 1. Prior to trial, on June 13, 2017, an evidentiary hearing took place to determine whether information regarding the first buccal swab and subsequent unsuccessful DNA testing would be admissible at trial. *See* ECF No. 67. At the hearing, Maria Orsino, a forensic biologist and acting quality assurance coordinator at the Erie County Central Police Services Forensic Laboratory, testified to the collection and testing of the

buccal swabs in this case. *Id.* Specifically, she testified that when testing the known DNA sample obtained from Petitioner, she was only able to obtain a partial DNA profile, meaning less than ten loci were useable for comparison purposes. *Id.* at 43. Orsino further testified that this outcome did not mean that there was a problem with the instrumentalities used in the collection of the DNA, but rather, usually indicates that there was not enough DNA in the sample obtained. *Id.* Indeed, testimony established that the method used to collect the sample through the federal kit, which transfers DNA onto a certain type of paper, does not work "well" with the extraction method used by the lab. *See id.* at 49.

At the conclusion of the hearing, the government argued that the testimony of Orsino was irrelevant as Orsino explained that she was unable to get a full profile because of the testing methods available. *Id.* 98-9. Even if the testimony of Orsino was relevant, the government contended, it should be excluded under Federal Rules of Evidence Rule 403, because any value of the testimony is substantially outweighed by the danger of confusing the jury. *Id.* In response, Petitioner's counsel argued that the testimony of what occurred in testing a state DNA kit and a federal DNA kit was relevant to show that reliable DNA testing is not guaranteed. *Id.* at 101-3. Moreover, Petitioner's trial counsel stated, it could cause the jury to have "serious doubts about the capabilities and the protocols that are used in th[e] lab." *Id.* at 114. The parties submitted subsequent briefing on the matter. *See* ECF No. 68; 69.

Prior to trial, on July 17, 2017, the Court rendered an oral decision on the evidentiary matter finding that Orsino's testimony was inadmissible and directing the parties not to refer to her. After a five-day jury trial, the jury rendered a verdict of guilty on both Count One and Count Two of the indictment.

On October 26, 2017, Petitioner filed a Notice of Appeal. ECF No. 109. On appeal, Petitioner (1) claimed that there was insufficient evidence as to Count One; (2) challenged the admissibility of evidence related to the first buccal swab; (3) claimed he received ineffective assistance of counsel for counsel's failure to seek the suppression of the second buccal swab; and (4) challenged the constitutionality of 21 U.S.C. § 844(a). *See* ECF No. 113. The Second Circuit issued a Summary Order on December 14, 2018, finding that there was sufficient evidence to find Petitioner unlawfully possessed a firearm, including, *inter alia*, evidence that officers saw Petitioner flee the scene holding an object "in a manner consistent with one holding a firearm," and DNA evidence. *Id.* at 3-4. The Second Circuit also determined that it was not impermissible for the Court to exclude evidence concerning the first buccal swab because it was neither arbitrary nor irrational to determine that the testimony would have had "barely minimal probative value." *Id.* at 4-6. Finally, the Second Circuit declined to decide Petitioner's ineffective assistance claim and held, based on clear Supreme Court precedent, that 21 U.S.C. § 844(a) was constitutional. *Id.* at 6-7.

This motion followed.

## DISCUSSION

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only where the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To prevail under § 2255, a defendant must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d

Cir. 1995) (internal quotation marks omitted).  Additionally, "[i]t is well settled law that § 2255 cannot . . . be employed to relitigate questions which were raised and considered on the appeal." *Castellana v. United States*, 378 F.2d 231, 233 (2d Cir. 1967) (internal citations omitted).

Petitioner is proceeding *pro se*.  The Court must therefore construe his pleadings liberally and in a way that raises the strongest arguments the pleadings suggest.  *See, e.g.*, *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 559 (S.D.N.Y. 2008).  To the extent possible, the Court assesses Petitioner's motion in this context.

Petitioner asserts that his right to effective assistance of counsel was violated due to counsel's failure to move to suppress the evidence from his second buccal swab.  ECF No. 114 at 4.  In support of such claim, Petitioner asserts that the prosecution's representations to the court in support of the search warrant "were minimally reckless" and should have "been suppressed as fruit of a *Franks* violation."  *Id.* at 5 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).  In response, the government ("Respondent") asserts that a *Franks* motion would have been frivolous because counsel had already unsuccessfully attempted to stay the second buccal swab, there were no false statements in the affidavit, and the government would not have been prevented from ultimately obtaining Petitioner's DNA.  ECF No. 120 at 8.  The Court agrees with Respondent.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), demonstrating that: (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result.  *See also Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011).  It is well-settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *DeLuca v. Lord*, 77 F.3d 578, 588 (2d Cir. 1996) (quoting *Strickland*, 466 U.S. at 690).  It is equally well-settled that the "[f]ailure to make a meritless

argument does not amount to ineffective assistance." *United States v. Regalado*, 518 F.3d 143, 149 n. 3 (2d Cir. 2008) (alteration in original) (additional citations omitted). Finally, the Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

As an initial matter, Petitioner's trial counsel initially sought court intervention to prevent the execution of the second buccal swab. ECF Nos. 7, 8. Counsel asserted that it was not clear whether in its application for the search warrant, the government indicated that there had been two separate buccal swab kits utilized to take Petitioner's DNA previously. *See* ECF No. 8. Indeed, the affidavit submitted in support of the government's motion to compel additional DNA samples informs the court that a buccal swab of Petitioner occurred on December 22, 2015, *see* ECF No. 8-1 at ¶ 6, that it could not be extracted using the equipment available to the CPS Lab, and so a new buccal swab was requested. *Id.* at ¶ 7. However, the affidavit does not indicate that there were numerous buccal swabs taken. *See generally*, *id.* No matter, the court denied the motion on January 14, 2016. ECF No. 9.

Due to the court's denial of the motion to prevent the execution of the warrant, this Court cannot say that counsel was objectively unreasonable in not subsequently moving to suppress the evidence obtained through the second buccal swab on the same grounds. Indeed, as set forth above, the "[f]ailure to make a meritless argument does not amount to ineffective assistance." *Regalado*, 518 F.3d at 149 n. 3 (alteration in original) (additional citations omitted). Rather than reassert an already failed argument in an attempt to suppress the DNA evidence, counsel made the strategic decision to focus on the lack of reliability in DNA testing through cross-examination. Specifically, for example, counsel elicited that it is possible for a person's DNA to be on an item that they never directly touched, *see* Trial Tr. at 602-03 (ECF No. 89), that low amounts of DNA,

6

as were present here, can add difficulty in the interpretation of the evidence, *id.* at 605, and that some of the DNA evidence here was below the stochastic threshold of the lab, meaning, there may have been important missing portions of the DNA, *id.* at 621-22. This decision was a strategic attempt by counsel to deter the jury from finding the DNA a credible source of evidence for conviction. *See United States v. Perez-Luna*, Nos. 07 Civ 5533(DC), 94 Cr. 709(DC), 2008 WL 5170179, at *3 (S.D.N.Y. Dec. 10, 2008) ("A decision to pursue a particular defense strategy, . . . does not constitute ineffective assistance of counsel so long as it is a 'conscious, reasonable informed decision made by an attorney with an eye to benefitting his client.'") (quoting *Pavel v. Hollins*, 261 F.3d 210, 218 (2d Cir. 2001)).

Additionally, it is well established that "[i]n order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)). Here, Petitioner claims that had counsel raised a *Franks* based argument regarding the warrant application, the evidence obtained from the second buccal swab would have been suppressed. Respondent asserts a *Franks* motion would have been frivolous.

A hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) is warranted where a defendant shows that the government provided to the court an affidavit which misstated or omitted material information and such misstatements or omissions were made intentionally or with a reckless disregard for the truth. *See United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013). In other words, the defendant must show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged

falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000).

In support of his assertion that a *Franks* argument would have been successful, Petitioner raises three main contentions that he claims were materially misleading, specifically, that were "minimally reckless and central to determining probable cause." ECF No. 114 at 5. First, the court was misled by the government because there was not a true need for additional DNA samples, rather, the need was due to cost and "shabby forensics". *Id.* at 6. Second, by not telling the court that the DNA mixture was "low copy" and therefore, not acceptable by the FBI CODIS database, the government was actively misleading the judge. *Id.* Third, there should have been a DNA match in the local databank due to Petitioner's prior conviction, and any assertion otherwise was inherently false. *Id.* at 7. Respondent asserts that each such basis is insufficient pursuant to *Franks* because the inability to extract the DNA using the equipment available was presented to the court, the contention that the DNA mixture was a "low copy" is not supported by the record, and the Petitioner's earlier DNA sample would not have been in a local databank but would have been in a state or federal databank. ECF No. 120 at 9-10.

The Court finds that Petitioner's first argument, that a second DNA swab was not a "genuine need," is simply not a sufficient basis upon which the Court can find that the government misled the court in seeking the search warrant. In fact, the affidavit submitted in support of the search warrant seeking the additional swab provided that "the Federal buccal swab kit could not be extracted using the equipment available to the CPS Lab. The CPS Lab indicated that a new buccal swab, using a New York State buccal swab kit, would be necessary for the additional testing requirement." ECF No. 8-1 at ¶ 7. This was not a false statement, but was later corroborated by Orsino's hearing testimony, as the DNA profile available was only a partial sample and there was

8

not enough DNA to sufficiently test.  ECF No. 67 at 43-4.  Petitioner maintains that by omitting statements from the affidavit that the new DNA swab was necessary because of "convenience, economics and shabby forensics" the affidavit remained misleading.  ECF No. 114 at 6.  However, for Petitioner to succeed on such an argument he must demonstrate that the omissions occurred intentionally or that the omitted information was clearly critical to the affidavit.  *See Rajaratnam*, 719 F.3d at 154.  A review of the record does not support a finding of this nature.  In fact, it is likely that such information was not included as it was simply not relevant to the probable cause determination.  *See id.* (noting that an affiant is not expected to include every piece of information in an affidavit).  Indeed, the crucial fact here, which was stated clearly in the affidavit, was the fact that the initial buccal swab did not provide the DNA necessary for testing.  Thus, this is simply not a basis to support an ineffective assistance claim based on the failure to present a *Franks* argument.

      Second, Petitioner contends that the court was misled because the government did not inform the court that the reason the gun mixture did not qualify for submission into the CODIS database was because it derived from a low copy number.  In support, Petitioner cites to a case wherein a defendant pointed to the FBI's common practice of not accepting low copy number testing into its CODIS database.  *See United States v. Morgan*, 53 F. Supp. 3d 732, 742 (S.D.N.Y. 2014).  However, it is unclear where the Petitioner obtained the information that the sample here was a low copy number and that it was rejected for such reason.  Indeed, Respondent notes that the information is not supported by the record, but that CPS Lab's guidelines simply state that a DNA profile obtained from a firearm do not qualify for submission to the DNA databank.  ECF No. 120 at 9-10.  Therefore, because it is unclear whether the sample here was actually a low copy number and rejected for that reason, the Court cannot conclude that the omission of such statement

was an active attempt to mislead the court. *See United States v. Harris*, 741 F. App'x 823, 826 (2d Cir. 2018) (denying defendant's *Franks* hearing claim, *inter alia*, for defendant's failure to provide any evidence that the court was misled by).

Finally, Petitioner asserts that a prior conviction in Erie County Court required his DNA collection, and therefore, his DNA would have been found in the local DNA databank, contrary to the statement made in the affidavit that there were no matches in the local databank. ECF No. 114 at 7. However, Respondent points out that pursuant to N.Y. Exec. Law §§ 995(7) and 995-c(5), any DNA sample would have been put into the state or national system, not the local DNA databank. ECF No. 120 at 10. Thus, it is not apparent that this was in fact a false or misleading statement. Regardless, it is unlikely that this information was "clearly critical to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). Indeed, even removing such a statement leaves the Court with the crucial issue—that the initial buccal swab of Petitioner did not provide sufficient DNA sample for testing.

Petitioner provided various letters and copies of correspondence to the Court regarding his attempt to obtain confirmation of his 1999 DNA submission from Erie County Clerks, Corrections and Community Supervision, and CPS Forensics Lab. *See* ECF Nos. 119, 122, 123. Based on such correspondence, it seems as though Petitioner received some information from Erie County, ECF No. 119 at 6, but was informed by Corrections and Community Supervision that his DNA sample was destroyed in accordance with the required retention period. ECF No. 123 at 6. Regardless, because this information was not critical to the probable cause determination, as the main reason for seeking a subsequent buccal swab was the inability to test the DNA initially provided, it does not impact the Court's decision on the issue.

The Court recognizes Petitioner's frustration with having to supply the government with numerous buccal swabs and notes that Petitioner's counsel made the lack of reliability on such test apparent during cross-examination at trial. Nevertheless, Petitioner's burden in demonstrating the conduct necessary to succeed under the standard set forth in *Franks v. Delaware*, 438 U.S. 154 (1978) cannot be met by the circumstances here, as there is simply no evidence to demonstrate that the alleged misstatements or omissions were designed to mislead the court or were made in reckless disregard of whether they would mislead the court. *See United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003). Therefore, Petitioner's counsel cannot be deemed ineffective for failing to raise such an argument. *See Matos*, 905 F.2d at 32 (counsel cannot be deemed ineffective for failing to raise a meritless suppression motion).

## CONCLUSION

For the reasons set forth above, Petitioner's § 2255 motion (ECF No. 114) is **DENIED**. Pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. In addition, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Petitioner is nonetheless advised that, should he decide to appeal this Decision and Order, Federal Rule of Appellate Procedure 4(a) governs the time to appeal, and a timely notice of appeal must be filed even though the Court declined to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: March 22, 2021
       Rochester, New York

                                           _____
                                           HON. FRANK P. GERACI, JR.
                                           Chief Judge
                                           United States District Court